UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| 145 SISSON AVENUE, LLC | ) |
| PLAINTIFF | ) CIVIL ACTION NO.: |
| V. | ) |
| AARON PURETZ | ) |
| DEFENDANT | ) JULY 6, 2023 |

## COMPLAINT

Plaintiff 145 Sisson Avenue, LLC complains and says:

### FIRST COUNT-BREACH OF GUARANTY

1.  Plaintiff 145 Sisson Avenue, LLC ("145 Sisson") is a Connecticut limited liability company whose office is located at 91 South Main Street, Wallingford, Connecticut.

2.  Plaintiff 145 Sisson's members are Kyle O'Hehir and Joseph Motta, both of whom are domiciled in the State of Connecticut.

3.  Defendant Aaron Puretz is domiciled at 43 Fenway Circle, Staten Island, New York.

4.  This court has jurisdiction under 28 USC §1332 because this matter is between citizens of different states and exceeds $75,000, exclusive of interest and costs.

5.   Paxe Sisson CT Limited Partnership issued a promissory note on or about May 3, 2021 to IceCap Real Estate Loan Fund I, LLC ("Note").

6.   A true and correct copy of the Note is attached as Exhibit 1.

7.   Defendant Aaron Puretz guaranteed the Note.

8.   A true and correct copy of the guaranty of the Note is attached as Exhibit 2 ("Guaranty").

9.   According to the allonge attached to Note, Plaintiff 145 Sisson is the owner and holder of the Note and Guaranty.

10.  The Note is secured by a mortgage ("Mortgage") on 145 Sisson Avenue, Hartford, Connecticut ("Premises").

11.  Upon information and belief, the Premises is worth $3,150,000 (see May 6, 2021 appraisal transmittal letter attached as Exhibit 3).

12.  The Note is in default and Defendant Aaron Puretz has not paid his Guaranty.

13.  After taking into account the value of Premises, Plaintiff 145 Sisson Portfolio, LLC is owed the following amounts:

| Payoff Calculation | |
|---|---|
| Loan | 145 Sisson Avenue |

| | |
|---|---|
| Origination Date | 5/5/2021 |
| Initial Principal Balance | $2,300,000 |
| Unpaid Principal Balance | $2,746,800 |
| Default Rate | 23.00% |
| Per Diem Default from 7/1/22 | $1,755 |
| | |
| Balloon Payment | $2,746,800 |
| Default Date | 7/1/2022 |
| Late Fee on Balloon Payment | $274,680 |
| Accrued Default Interest | $640,539 |
| | |
| Total Payoff | $3,662,019 |
| | |
| Appraised Value | $3,150,000 |
| Deficiency | $512,019 |

14.   Plaintiff 145 Sisson Avenue, LLC has been damaged by Defendant Aaron Puretz' actions.

Plaintiff 145 Sisson Avenue, LLC prays for:

1.   Compensatory damages;

2.   Reasonable attorney's fees pursuant to the terms of the Note;

3.   Interest against before and after judgment;

4.   Costs; and

5.   Such other and further relief as the court deems just and equitable.

G:\2433 Constitution Credit LLC\007 South Green Prtfolio v. Paxe Sisson CT Lmtd Partnership loan\Feferal-145 Sisson Guranty action\145 Sisson  v. Gurantor complaint2023-07-05.doc

Houston Putnam Lowry, Esq.
Counsel for Plaintiff 145 Sisson Avenue,
        LLC
FORD & PAULEKAS, LLP
280 Trumbull Street - Suite 2200
Hartford, CT 06103
Direct: (860) 808-4213
Mobile: (860) 543-4372
Fax: (860) 249-7500
Email: PTL@HPLowry.com
Federal Bar # CT05955

G:\2433 Constitution Credit LLC\007 South Green Prtfolio v. Paxe Sisson CT Lmtd Partnership loan\Feferal-145 Sisson Guranty action\145 Sisson  v. Gurantor complaint2023-07-05.doc

# EXHIBIT 1

## PROMISSORY NOTE

**PAXE SISSON CT LIMITED PARTNERSHIP**
**$2,800,000.00**
**May 03, 2021**

FOR VALUE RECEIVED, the undersigned, **PAXE SISSON CT LIMITED PARTNERSHIP,** a Connecticut limited partnership having its principal place of **67 Burnside Avenue, East Hartford, CT 06108** (the "Borrower"), promises to pay to the order of **ICECAP REAL ESTATE LOAN FUND I, LLC,** a New York limited liability company having its principal place of business at **31 West 34th Street, 4th Floor, New York NY 10001** (the "Lender"), the principal sum of **Two Million Eight Hundred Thousand and 00/100 dollars ($2,800,000.00),** or so much thereof as may be advanced by Lender to Borrower from time to time (the "Principal Amount"), together with interest on the unpaid Principal Amount thereof computed from the date advanced (the "Commencement Date"), at the rates provided herein until **June 01, 2022** or such earlier date on which the Principal Amount becomes due and payable as provided herein (the "Maturity Date"); provided, however, that from and after (i) the Maturity Date, whether upon stated maturity, acceleration or otherwise, or (ii) the date on which the interest rate hereunder is increased to the Default Rate (as hereinafter defined) as provided herein, such additional interest shall be computed at the Default Rate.

As used herein, the term "Default Rate" shall mean a rate of interest of twenty three percent (23.0%) per annum, but in no event shall the Default Rate be in excess of the Maximum Rate (as hereinafter defined).

If any payment of interest is not paid on or before the due date for such payment, a late charge equal to the lesser of ten percent (10%) of such overdue payment or the maximum amount permitted by applicable law shall automatically become due to the holder of this promissory note (as may be amended, restated or modified from time to time, the "Note"), subject, however, to the limitation that late charges may be assessed only once on each overdue payment. Said late charges do not constitute interest and shall constitute compensation to the holder of this Note for collection and co-lender administration costs incurred hereunder. In addition, if any payment of principal or interest is not paid when due, the holder of this Note shall have the right, upon notice to Borrower, to increase the rate of interest per annum on all amounts outstanding to the Default Rate and, upon said notice, such rate increase shall be effective retroactively as of the date from which the interest component of such overdue payment began to accrue and shall remain in force and effect for so long as such default shall continue. This paragraph shall not be construed as an agreement or privilege to extend the due date of any payment, nor as a waiver of any other right or remedy accruing to the holder of this Note by reason of any default.

Principal and interest hereunder shall be payable as follows:

      **A.**      From the date hereof, interest on the principal amount of this Note shall accrue at the rate of **8%** per annum, for the period from the date hereof to and including May 31, 2021 shall be payable at the closing of the loan.

      **B.**      The rate of interest of this Note, which shall remain effective until an Event of Default (as defined below), shall be fixed at **8%** per annum. Interest on this Note shall be calculated on the basis of a 30-day month and a 360-day year.

**C.**     Beginning on **July 01, 2021** and continuing on the 1st **day** of each and every month thereafter through and including the payment due on **June 01, 2022** (as hereinafter defined), Maker shall make payments of interest only, in arrears, on the principal amount of this Note.

**D.**     If not sooner paid, the entire principal amount of this Note, together accrued interest and with all other sums due hereunder, shall be due and payable in full on **June 01, 2022** (the "Maturity Date"). It is understood and agreed by Maker that if sufficient prepayments of principal have not been made, a balloon payment will be due on the Maturity Date.

**E.**     All payments received will be credited first to late charges and costs hereunder, then to interest accrued at the applicable interest rate hereinafter set forth, with the balance on account of principal.

**F.**     At no time shall the interest rate exceed the maximum rate permitted by the usury statutes governing this Note, if any. If, by application of the above interest rate formula, the interest rate would exceed and violate such usury statutes, interest shall accrue at the maximum rate permitted by law.

(a)     Prepaid Interest (as defined in the Loan and Security Agreement of even date herewith, as may be amended, restated or modified from time to time, hereinafter, the "Loan Agreement"), if any, shall be utilized in accordance with the terms of the Loan Agreement.

The Principal Amount may be prepaid in whole or in part at any time without charge, penalty or premium AFTER December 01, 2021. In the event the loan is paid in full or in part prior to December 01, 2021, Borrower shall nonetheless be indebted to and owe Lender for interest on the Principal Amount through said date (i.e. a six (6) month prepayment penalty). All prepayments shall be paid, together with accrued interest to the date of prepayment, upon at least fifteen (15) days' prior written notice to Payee of maker's intention to prepay. Upon the giving of such notice of maker's intention to prepay the amount set forth in such notice, the amount to be prepaid shall become due and payable on the date specified in such notice.

It is further agreed that the holder hereof may collect a progressive exit fee equal to ten percent (10%) of any payment required hereunder, including the final payment, or required under any security agreement, mortgage, or any other instrument, document, or agreement executed and/or delivered in connection herewith which is not paid within five (5) days of the due date thereof. For each payment which is not made prior to the expiration of such five (5) day period, an amount equal to ten percent (10%) of the payment shall accrue as an Exit Fee due by Maker at the Maturity Date (whether by default and acceleration or otherwise). Such Exit Fee is to cover the extra expenses involved in handling delinquent payments and is not to be construed to cover other costs and attorneys' fees incurred in any action to collect this Note or to foreclose the mortgage securing the same. This provision shall not affect or limit the holder's rights or remedies with respect to any Event of Default.

Leasing Covenant. Borrower shall lease the Premises to Eligible Tenant's at the Loan Closing or by the 90 day which is thirty (30) days after the Loan Closing (the "30 Day Lease Date"). If Borrower provides Lender evidence to Lender in its sole discretion that Borrower has (a) leased the Premises to (b) an Eligible Tenant, (c) pursuant to an Eligible Lease by (d) the 30 Day Lease Date, then Borrower will

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Promissory Note

have complied with this Section. If Borrower fails to comply with (a) through (d) above, then Borrower's interest rate shall be increased two hundred (200) basis points above the note contract rate until the Premises are leased in accordance with this Section.

Borrower and each surety, endorser and guarantor hereof hereby waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, demand for payment, protest, notice of protest and notice of dishonor, to the extent permitted by law. Borrower further waives trial by jury. No extension of time for payment of this Note or any installment hereof, no alteration, amendment or waiver of any provision of this Note and no release or substitution of any collateral securing Borrower's obligations hereunder shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower under this Note.

Any forbearance by the holder of this Note in exercising any right or remedy hereunder or under any other agreement or instrument in connection with the Loan or otherwise afforded by applicable law, shall not be a waiver or preclude the exercise of any right or remedy by the holder of this Note. The acceptance by the holder of this Note of payment of any sum payable hereunder after the due date of such payment shall not be a waiver of the right of the holder of this Note to require prompt payment when due of all other sums payable hereunder or to declare a default for failure to make prompt payment.

If this Note is placed in the hands of an attorney for collection, Borrower shall pay all costs incurred and reasonable attorneys' fees for legal services in the collection effort, whether or not suit be brought.

At the election of the holder of this Note, all payments due hereunder may be accelerated, and this Note shall become immediately due and payable without notice or demand, upon the occurrence of any of the following events (each an "Event of Default"): (1) Borrower fails to pay on or before the date due, any amount payable hereunder; (2) Borrower fails to perform or observe any other term or provision of this Note with respect to payment; (3) Borrower fails to perform or observe any other term or provision of this Note; or (4) there exists a default under the Mortgage (as hereinafter defined), a default under any Guaranty (as hereinafter defined) or a default under or misrepresentation contained in any other agreement, document or certificate of Borrower or any Guarantor (as hereinafter defined) in connection with the Loan, which default is not cured within any grace period expressly provided therefor in such document. In addition to the rights and remedies provided herein, the holder of this Note may exercise any other right or remedy in any other document, instrument or agreement evidencing, securing or otherwise relating to the indebtedness evidenced hereby in accordance with the terms thereof, or under applicable law, all of which rights and remedies shall be cumulative.

If this Note is transferred in any manner, the right, option or other provisions herein shall apply with equal effect in favor of any subsequent holder hereof.

Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid or agreed to be paid hereunder exceed the highest lawful rate permitted under applicable usury law (the "Maximum Rate") and the payment obligations of Borrower under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the maturity of the unpaid principal balance hereof or otherwise, the aggregate amounts paid on this Note shall include amounts which by law are deemed interest and which would exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to have been the result of a mistake on the part of both Borrower and the holder of this Note, and the party receiving such excess payments shall promptly credit such excess (to the extent

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Promissory Note

only of such payments in excess of the Maximum Rate) against the unpaid principal balance hereof and any portion of such excess payments not capable of being so credited shall be refunded to Borrower.

This Note is secured by, among other things, that certain Mortgage and Security Agreement (as may be amended, restated or modified from time to time, the "Mortgage"), an Assignment of Leases and Rents (as may be amended, restated or modified from time to time, the "Assignment"), an Assignment of Licenses, Contracts, Plans, Specifications, Surveys, Drawings and Reports (as may be amended, restated or modified from time to time, the "Assignment of Licenses"), all of the foregoing being of even date herewith and a first lien on the certain real estate collateral (the "Collateral") identified in the Mortgage, and is entitled to the benefits and security thereof.  Reference is made to the Mortgage, Assignment and Assignment of Licenses for descriptions of the respective rights and obligations of the Borrower and Lender thereunder.  This Note is guaranteed by the separate Guaranty of even date herewith (as may be amended, restated or modified from time to time, the "Guaranty") of Aron Puretz (the "Guarantor") and reference is made to the Guaranty for the respective rights of the parties thereunder.  Borrower hereby agrees to indemnify, defend and hold harmless Lender from and against any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by Lender in connection with or as a result of any default (following notice and the opportunity to cure provided for in such document) by Borrower or Guarantor under the Mortgage, Assignment, or Assignment of Licenses, or by the Guarantor (following notice and the opportunity to cure provided for in such document) under the Guaranty, or a default (following notice and the opportunity to cure provided for in such document) under or misrepresentation contained in any other agreement, document or certificate of Borrower or any Guarantor executed or delivered in connection with the Loan (collectively, the "Loan Documents").

By its acceptance of Lender's funds and execution of this Note, Borrower acknowledges, agrees and confirms that it has no defense, offset or counterclaim for any occurrence in relation to this Loan and Borrower acknowledges that Lender has complied with all of its obligations under the Loan Documents as of the date hereof.

All payments of principal and interest hereunder are payable in lawful money of the United States of America and shall be made by wire transfer to the account of Agent at Valley National Bank, pursuant to wiring instructions to be provided to Borrower at Closing or to such other accounts as may be instructed by Agent.

Borrower is hereby prohibited from exercising against Lender (as a group) or Agent, any right or remedy which it might otherwise be entitled to exercise against any one or more (but less than all) of the parties constituting Lender, including, without limitation, any right of setoff or any defense.  Any other claim that Borrower may have, arising from or related to the transaction evidenced by this Note and the other Loan Documents shall be asserted only against the Agent and not against any of the individual parties constituting Lender.

In the event that an action to enforce this Note or the other Loan Documents results in the entry of a judgment (in foreclosure or otherwise) against the Borrower and/or any Guarantor, interest on the judgment shall continue to accrue at the Default Rate through the date of satisfaction of the judgment debt in full, and not at the statutory post-judgment rate of interest.  Borrower waives any right and/or claim to have the post-judgment interest accrue at the statutory rate.

This Note shall be binding on the parties hereto and their respective heirs, legal representatives, executors, successors and assigns.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Promissory Note

This Note shall be construed without any regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted.

This Note shall be governed by the laws of the State of New York without regard to choice of law consideration. Borrower hereby irrevocably consents to the jurisdiction of the courts of the State of New York and of any federal court located in such State in connection with any action or proceeding arising out of or relating to this Note or the other Loan Documents.

This Note may not be changed or terminated orally.

A determination that any portion of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision to the extent legally permissible and otherwise as it may apply to other persons or circumstances.

Notwithstanding anything contained herein to the contrary, if there is more than one Borrower, each Borrower shall be jointly and severally liable for a breach of any and all covenants, representations, warranties, obligations and liabilities under this Note.

**JURY TRIAL WAIVER. BORROWER AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY BORROWER OR THE HOLDER OF THIS NOTE ON OR WITH RESPECT TO THIS NOTE OR ANY OTHER LOAN DOCUMENT OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. BORROWER ACKNOWLEDGES AND AGREES THAT AS OF THE DATE HEREOF THERE ARE NO DEFENSES OR OFFSETS TO ANY AMOUNTS DUE IN CONNECTION WITH THE LOAN. FURTHER, BORROWER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. BORROWER ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS NOTE AND THAT LENDER WOULD NOT EXTEND CREDIT TO BORROWER IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS NOTE.**

[Remainder of this page intentionally left blank.]

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Promissory Note

IN WITNESS WHEREOF, the undersigned has executed this Note on the date set forth above.

Signed, Sealed, and Delivered in the Presence of:

                                                        MAKER
                                                        **PAXE SISSON CT LIMITED**
                                                        **PARTNERSHIP**

                                                        By:  Sisson Manager DE LLC, Its
                                                                General Partner

Name: _____               By: _____
                                                          Name:  Aron Puretz
                                                          Title:   Sole Partner

Name: _____

STATE OF  NJ      )
                          ) ss.:
COUNTY OF  Ocean  )

     I certify that on May 5, 2021 Aron Puretz came before me in person and stated to my satisfaction that he/she:

     (a) made the attached instrument; and

     (b) was authorized to and did execute this instrument on behalf of and as Sole Partner of Sisson Manager DE LLC, General Partner  of PAXE SISSON CT LIMITED PARTNERSHIP (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its limited partnership and its partners.

Goldie M Senderovits
NOTARY PUBLIC
State of New Jersey
ID # 50090701
My Commission Expires 9/20/2023

                                                NOTARY PUBLIC

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Promissory Note

**ALLONGE**

ENDORSEMENT to that certain Promissory Note dated as of May 3, 2021, by and from PAXE SISSON CT LLC in favor of ICECAP REAL ESTATE LOAN FUND I, LLC, in the original principal sum of $2,800,000.00.

Pay to the order of **145 SISSON AVENUE LLC**, a Connecticut limited liability company ("*Assignee*"), without recourse, representation or warranty, express or implied.

DATE:  As of June 21, 2023

ICECAP REAL ESTATE LOAN FUND I, LLC,
a New York limited liability company

By: _____
    Name: Jacob Oved
    Title: VP

**THIS NOTE ALLONGE SHOULD BE PERMANENTLY AFFIXED
TO THE PROMISSORY NOTE DESCRIBED ABOVE**

# EXHIBIT 2

## GUARANTY

**PAXE SISSON CT LIMITED PARTNERSHIP**
**$2,800,000.00**
**May 03, 2021**

WHEREAS, **PAXE SISSON CT LIMITED PARTNERSHIP,** a Connecticut limited partnership having its principal place of business at **67 Burnside Avenue, East Hartford, CT 06108** (the "Borrower"), has requested **ICECAP REAL ESTATE LOAN FUND I, LLC,** a New York limited liability company having its principal place of business at **31 West 34th Street, 4th Floor, New York NY 10001** (the "Loan"), which Loan will be evidenced by a Commercial Promissory Note of even date herewith, (as may be amended, restated or modified from time to time, hereinafter, the "Note") from Borrower to Lender, and secured by, among other things, that certain Loan and Security Agreement of even date herewith, (as may be amended, restated or modified from time to time, the "Loan Agreement") and that certain Mortgage and Security Agreement of even date herewith, (as may be amended, restated or modified from time to time, the "Mortgage") from Borrower to Lender, all of the foregoing being of even date herewith. All capitalized terms used herein but not defined shall have the meaning ascribed to such terms in the Loan Agreement;

WHEREAS, Lender is willing to make the Loan to Borrower only if, among other things, the undersigned (sometimes referred to herein individually and collectively as the "Guarantor") executes and delivers this Guaranty of Payment (as may be amended, restated or modified from time to time, "Guaranty") and guarantees payment to Lender of the Debt (as hereinafter defined) in the manner provided herein; and

WHEREAS, the undersigned expects to derive benefit from the Loan.

NOW, THEREFORE, in order to induce Lender to make the Loan to Borrower, the undersigned hereby guarantees absolutely and unconditionally to Lender the payment of the Debt and covenants and agrees with Lender as follows:

1.    Recitals.  The recitals set forth above are incorporated herein by reference.

2.    Guaranty Clause.  The Guarantor hereby absolutely, irrevocably and unconditionally guaranties to Lender the full, prompt and unconditional payment of the Debt, when and as the same shall become due, whether at the stated maturity date, by acceleration or otherwise, and the full, prompt and unconditional performance of each and every term and condition of every transaction to be kept and performed by Borrower under the Note. This Guaranty is a primary obligation of Guarantor and shall be a continuing inexhaustible guaranty. Lender may require Guarantor to pay and perform any or all of the Guarantor's liabilities and obligations under this Guaranty and may proceed immediately against Guarantor without being required or obligated to bring any proceeding or take any action against Borrower, any other guarantor or any other person, entity or property prior thereto. The liability of each Guarantor hereunder is joint and several with all other Guarantors, if applicable, and all other guarantors, and is independent of and separate from the liability of Borrower, any other guarantor, person or entity, and is independent of the availability of any collateral security for and/or under any documents granting Lender security for the Loan.

(a)    The term "Debt" as used in this Guaranty shall mean the principal sum evidenced by the Note and secured by the Mortgage, together with interest thereon at the rate of interest specified in the Note and all other sums which may or shall become due and payable pursuant to the provisions of the Note, Mortgage, Loan Agreement, or any other agreement, document or certificate executed and/or

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Guaranty

delivered by Borrower to Lender in connection with the Loan, including any and all modifications, amendments, and ratifications thereto (collectively the "Loan Documents").

(b)     The undersigned agrees that, upon demand, the undersigned will reimburse Lender, to the extent that such reimbursement is not made by Borrower, for all expenses (including reasonable counsel fees) incurred by Lender in connection with the collection of the Debt or any portion thereof, including any expenses incurred in any post-judgment proceedings to collect and enforce such judgment. This provision is separate and several and shall survive the merger of this Guaranty into any judgment on this Guaranty.

(c)     All moneys available to Lender for application in payment or reduction of the Debt may be applied by Lender in such manner and in such amounts and at such time or times and in such order and priority as Lender may see fit to the payment or reduction of such portion of the Debt or other obligations of Borrower as Lender may elect.

(d)     This Guaranty is an absolute, continuing, unconditional and unlimited guaranty of payment and not merely of collection and Lender shall be entitled to payment from the undersigned without first commencing any action against Borrower or resorting to any security or to any credit on the books of Lender in favor of Borrower. The undersigned acknowledges and agrees that this Guaranty and any or all other guaranties made to Lender in connection with this Loan are joint and several guaranties.

3.     Lender's Rights. The undersigned hereby consents that from time to time, before or after any default by Borrower, with or without further notice to or assent from the undersigned, (i) any security at any time held by or available to Lender for any obligation of Borrower, (ii) any security at any time held by or available to Lender for any obligation of any other person or party secondarily or otherwise liable for all or any portion of the Debt, and/or (iii) any obligation arising under any other guaranty to Lender made in connection with the Loan, may be exchanged, surrendered or released and any obligation of Borrower may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part, or any default with respect thereto waived, and Lender may fail to set off and may release, in whole or in part, any balance of any credit on its books in favor of Borrower, and may extend further credit in any manner whatsoever to Borrower, and generally deal with Borrower or any such security or obligation and the undersigned shall remain bound under this Guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing. No invalidity, irregularity or unenforceability of all or any part of the Debt or the impairment or loss of security or obligation therefor, whether caused by any action or inactions of Lender or otherwise, shall affect or impair this Guaranty.

4.     Guarantor Waivers. The undersigned hereby waives and agrees not to assert or take advantage of any defense based upon:

(a)     Notice of acceptance of this Guaranty and of the making of the Loan by Lender to Borrower;

(b)     Presentment and demand for payment of the Debt or any portion thereof;

(c)     Protest and notice of dishonor or default to the undersigned with respect to the Debt or any portion thereof;

2

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Guaranty

    (d)     Notice of intent to accelerate, notice of acceleration and all other notices to which the undersigned might otherwise be entitled;

    (e)     Any demand for payment under this Guaranty;

    (f)     The incapacity, lack of authority, death or disability of Borrower or any other person or entity;

    (g)     The failure of Lender to commence an action against Borrower and/or Guarantor or to proceed against or exhaust any security held by Lender at any time, or to pursue any other remedy whatsoever at any time;

    (h)     Any duty on the part of Lender to disclose to the undersigned any facts Lender may now or hereafter know regarding Borrower, regardless of whether Lender has reason to believe (i) that any such facts materially increase the risk beyond that which the undersigned intends to assume, or (ii) that such facts are unknown to the undersigned, the undersigned acknowledging that he, she or it is fully responsible for being and keeping informed of the financial condition and affairs of Borrower;

    (i)     Lack of notice of default, demand of performance or notice of acceleration to Borrower or any other party with respect to the Loan or Borrower's obligations guaranteed hereby;

    (j)     The consideration for this Guaranty (or lack or inadequacy thereof);

    (k)     Any acts or omissions of Lender which vary, increase or decrease the risk on the undersigned;

    (l)     Any rights or defenses based upon an offset by the undersigned against any obligation now or hereafter owed to the undersigned by Borrower;

    (m)     Any statute of limitations affecting the liability of the undersigned hereunder, the liability of Borrower or Guarantor under the Loan Documents or the enforcement hereof, to the extent permitted by law;

    (n)     The application by Borrower of the proceeds of the Loan for purposes other than the purposes represented by Borrower to Lender and the undersigned or intended or understood by Lender or the undersigned;

    (o)     An election of remedies by Lender, including any election to proceed against any collateral by judicial or nonjudicial foreclosure, whether real property or personal property, or by deed in lieu thereof, and whether or not every aspect of any foreclosure sale is commercially reasonable, and whether or not any such election of remedies destroys or otherwise impairs the subrogation rights of the undersigned or the rights of the undersigned to proceed against Borrower or any guarantor by way of subrogation or for reimbursement or contribution, or all such rights;

    (p)     Any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in any other aspects more burdensome than that of the principal obligor;

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Guaranty

(q)     Lender's election, in any proceeding instituted under Title 11 of the United States Code (the "Bankruptcy Code"), of the application of Section 1111(b)(2) of the Bankruptcy Code or any successor statute; and

(r)     Any borrowing or any grant of a security interest under Section 364 of the Bankruptcy Code.

THIS IS AN UNCONDITIONAL AND IRREVOCABLE WAIVER OF ANY RIGHTS AND DEFENSES THE UNDERSIGNED MAY HAVE BECAUSE BORROWER'S DEBT IS SECURED BY INTERESTS IN REAL PROPERTY.

5.     Collection and Enforcement.

(a)     LENDER MAY COLLECT FROM THE UNDERSIGNED WITHOUT FIRST FORECLOSING ON ANY REAL OR PERSONAL PROPERTY COLLATERAL PLEDGED BY BORROWER; AND

(b)     IF LENDER FORECLOSES ON ANY REAL PROPERTY COLLATERAL PLEDGED BY BORROWER:

i.     THE AMOUNT OF THE DEBT MAY BE REDUCED ONLY BY THE PRICE FOR WHICH THAT COLLATERAL IS SOLD AT A FORECLOSURE SALE, EVEN IF THE COLLATERAL IS WORTH MORE THAN THE SALE PRICE; AND

ii.     LENDER MAY COLLECT FROM THE UNDERSIGNED EVEN IF LENDER, BY FORECLOSING ON THE REAL PROPERTY COLLATERAL, HAS DESTROYED ANY RIGHT THE UNDERSIGNED MAY HAVE TO COLLECT FROM BORROWER.

6.     Successors and Assigns.  Each reference herein to Lender shall be deemed to include its successors and assigns, in whose favor the provisions of this Guaranty shall also inure.  Each reference herein to the undersigned shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of the undersigned, all of whom shall be bound by the provisions of this Guaranty.

7.     No Waiver.  No delay on the part of Lender in exercising any rights hereunder or failure to exercise the same shall operate as a waiver of such rights; no notice to or demand on the undersigned shall be deemed to be a waiver of the obligation of the undersigned or of the right of Lender to take further action without notice or demand as provided herein; nor in any event shall any modification or waiver of the provisions of this Guaranty be effective unless in writing nor shall any such waiver be applicable except in the specific instance for which such waiver is given.

8.     Representations and Warranties.  To further induce Lender to make the Loan to Borrower, the Guarantor makes the following warranties and representations, with the knowledge that Lender will rely on the veracity thereof:

(a)     The execution and delivery by the Guarantor of this Guaranty and any other document executed and/or delivered by the Guarantor to Lender in connection therewith (collectively, the "Guaranty Documents"), and the performance of the obligations thereunder, do not and will not: (a)

4

violate any provision of law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to the Guarantor; or (b) result in any breach of or constitute any default under any indenture or loan or credit agreement or any other agreement, lease or instrument to which the Guarantor is a party or by which the Guarantor or his/her/their/its properties may be bound or affected, and the Guarantor is not in default under any such law, rule, regulation, order, writ, judgment, injunction, decree, determination or award or any such indenture, agreement, lease or instrument.

(b)     There is no material action, suit, proceeding, inquiry or investigation, at law or in equity, or before any court, governmental instrumentality, public board or arbitrator pending or threatened against or affecting the Guarantor or any of his properties or rights, wherein an unfavorable decision, ruling or finding would (i) to the extent not covered by insurance as to which the insurer has not disclaimed coverage, result in any material adverse change in the financial condition, business, properties or operations of the Guarantor; (ii) materially or adversely effect the Guaranty; or (iii) adversely effect the validly or enforceability of the Guaranty Documents.

(c)     The Guarantor is in compliance with all applicable laws.

(d)     Borrower is a pre-existing entity actively engaged in the operation of its business and has not been created as a vehicle to obtain the Loan. The proceeds of the Loan will be used by Borrower solely to (a) discharge or release liens upon the real property encumbered by the Mortgage (the "Property") or for other business purposes directly related to the Property, and (b) pay fees and other amounts related thereto or to the making of the Loan, and the proceeds of the Loan will not be paid over or diverted by Borrower to any member, officer, director or shareholder of Borrower, the Guarantor, any other guarantors of the Loan or any other person.

(e)     On the date hereof, (i) the assets of the Guarantor exceed his liabilities, and (b) the Guarantor is paying his debts as they become due.

9.     No Subrogation.  Notwithstanding any payments made by the undersigned pursuant to the provision of this Guaranty, the undersigned shall have no right of subrogation in and to the Note, or any other security held by or available to Lender for the Debt or the payment thereof until the Debt has been paid in full to Lender.

10.     Limitation of Remedies.  The Guarantor is hereby prohibited from exercising against Lender or Agent any right or remedy which it might otherwise be entitled to exercise against any one or more (but less than all) of the individual parties constituting Lender, including, without limitation, any right of set-off or any defense.

11.     Miscellaneous.

(a)     Governing Law.  This Guaranty is, and shall be deemed to be, a contract entered into under and pursuant to the laws of the State of New York and shall be in all respects governed, construed, applied and enforced in accordance with the laws of said state without regard to conflicts of laws considerations; and this Guaranty shall be construed without regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted; and no defense given or allowed by the laws of any other state or country shall be interposed in any action or proceeding hereon unless such defense is also given or allowed by the laws of the State of New York. The undersigned agrees to submit to personal jurisdiction in the State of New York in any action or

5

proceeding arising out of this Guaranty and, in furtherance of such agreement, the undersigned hereby agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the undersigned in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New York and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by registered mail to or by personal service at the last known address of the undersigned, whether such address be within or without the jurisdiction of any such court.

      (b)    <u>Waivers</u>.  The Guarantor hereby waives any claim, right or remedy which the Guarantor may now have or hereafter acquire against Borrower that arises hereunder and/or from the performance by the Guarantor hereunder, including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Lender against Borrower or any security which Lender now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.  The foregoing waiver by the Guarantor shall terminate and be of no further force or effect at such time as the entire Debt has been fully and indefeasibly paid to and received by Lender.

      (c)    <u>Severability</u>.  A determination that any portion of this Guaranty is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Guaranty to any circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other circumstances.

      (d)    <u>Notices</u>.  All notices, consents, approvals and requests required or permitted hereunder or under any other Loan Document shall be given in writing and shall be effective for all purposes if hand delivered or sent by (a) certified or registered United States mail, postage prepaid, return receipt requested or (b) expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, and by telecopier (with answer back acknowledged), addressed as follows (or at such other address and a person as shall be designated from time to time by any party hereto, as the case may be, in a written notice to the other parties hereto in the manner provided for in this Section):

| | |
|---|---|
| If to Lender: | IceCap Real Estate Loan Fund I, LLC<br>31 West 34th Street, 4th Floor,<br>New York NY 10001 |
| With a copy to: | **LaRocca Hornik Rosen, et al**<br>**Attn:  Jonathan L. Hornik, Esq.**<br>**83 South Main Street, Suite 302**<br>**Freehold, NJ  07728** |
| If to Guarantor: | Aron Puretz<br>43 Fenway Circle, Staten Island, NY 10308 |
| With a copy to: | |

6

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Guaranty

A notice shall be deemed to have been given: in the case of hand delivery, at the time of delivery; in the case of registered or certified mail, when delivered or the first attempted delivery on a business day; or in the case of expedited prepaid delivery and telecopy, upon the first attempted delivery on a business day.

(e)     <u>Jury Trial Waiver</u>.  THE UNDERSIGNED AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY THE UNDERSIGNED OR LENDER ON OR WITH RESPECT TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENT OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY.  LENDER AND THE UNDERSIGNED EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. FURTHER, THE UNDERSIGNED WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.  THE UNDERSIGNED ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS GUARANTY AND THAT LENDER WOULD NOT EXTEND CREDIT TO BORROWER IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS GUARANTY.

[Remainder of this page intentionally left blank.]

7

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Guaranty

IN WITNESS WHEREOF, the undersigned has executed this Guaranty as of the date first above set forth.

Signed, Sealed, and Delivered in the Presence of:

GUARANTOR

Name: _____

_____
Aron Puretz, individually

Name: _____

STATE OF  NJ     )
                      ) ss.:
COUNTY OF  Ocean    )

On May 5, 2021 before me personally came Aron Puretz, who being by me duly sworn, did depose and say that he/she signed this instrument as his/her voluntary act and deed.

NOTARY PUBLIC

Goldie M Senderovits
NOTARY PUBLIC
State of New Jersey
ID # 50090701
My Commission Expires 9/20/2023

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Guaranty

# EXHIBIT 3



61-63 Crosby Street, Floor 3
New York, NY 10012

May 6, 2021

Joey Bekar
Ice Lender Holdings
31 W 34th Street, 4th Floor
New York, NY 10001

Re:     Appraisal File No. 2100010395
        Multifamily Building
        145 Sisson Ave.
        Hartford, CT 06105

Dear Mr. Bekar,

In accordance with your request, we have completed an appraisal of 145 Sisson Ave. for the purpose of advancing an opinion of the As Is Market Value of the Leased Fee Interest and the Prospective Market Value As Complete/Stabilized of the Leased Fee Interest.

The subject is currently a fully occupied 3-story, elevatored, multifamily building consisting of 50 residential units. It contains 43,380 square feet of gross building area. The purchaser plans to renovate and turnover the entire property. Each unit will be cosmetically upgraded in order to achieve market rents. We expect it to take 2 years to turn over the entire property and stabilize.

The subject is situated on a 44,350 square feet parcel in an NX-2 zone. It is identified in the city of Hartford tax maps as Parcel 135-390-245.  The subject property is located in the South Hartford neighborhood of Hartford. Based on the subject property's zoning, physical characteristics, location, and forecasted economic conditions, continued multifamily apartment use is concluded to be the highest and best use as improved.

Our analyses, opinions and conclusions were developed, and this report has been prepared, in conformance with the Standards of Professional Practice and Code of Professional Ethics of the Appraisal Institute, the Uniform Standard of Professional Appraisal Practice (USPAP), Title XI (with amendments) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), and applicable state appraisal regulations. To report the assignment results, we use the Appraisal Report option of Standards Rule 2-2(a) of USPAP. The appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan.

This appraisal is prepared in compliance with Ice Lender Holdings's appraisal guidelines as well as the Interagency Appraisal and Evaluation Guidelines dated December 2, 2010.

After carefully considering all available information and factors affecting value, our opinion is:

### Final Value Conclusion

| Value | Date | Interest Appraised | Conclusion |
|---|---|---|---|
| Prospective Market Value As Complete/Stabilized | March 25, 2023 | Leased Fee Interest | $4,000,000 |
| As Is Market Value | March 25, 2021 | Leased Fee Interest | $3,150,000 |

The global outbreak of the "novel coronavirus," which has resulted in the COVID-19 pandemic, is presently affecting the US population and economy. The extent and magnitude of the direct or indirect effects of this event on the national and local economy, or real estate markets is indeterminate and not quantifiable as market evidence is still limited. The reader is cautioned, and reminded that the conclusions presented in this appraisal report are based on information available as of the effective date(s) of valuation indicated. Although we have made reasonable efforts to estimate the impact, due to the uncertainty in real estate and financial markets it is difficult to fully assess the effect. The appraiser makes no representation as to the effect on the subject property of this event, or any event, subsequent to the effective date of the appraisal.



61-63 Crosby Street, Floor 3
New York, NY 10012

Mr. Bekar
Page 2
May 6, 2021

The value conclusions are subject to the following **Extraordinary Assumptions**[1] that may affect the assignment results. If the assumption is found to be false as of the effective date of the appraisal, we reserve the right to modify our value conclusions:

- Our opinion of the prospective market values upon completion and upon stabilization assume that the effects of COVID-19 will be temporary in nature between the current effective date and our prospective valuation dates. We expect there will be no other significant changes in the applicable economic conditions that could impact the subject property as currently perceived. The prevailing mindset among economists and real estate experts is that a rebound of the economy is tied to the availability and wide distribution of vaccines to the general population.  According to the CDC, the average daily rate of COVID-19 vaccine administration in the US has been steadily increasing since the first shots were administered on December 14, 2020. Health experts maintain that the vaccine will be widely available to the general public in the next 2 to 5 months. Most economists expect a rebound in the local and overall economy once the vaccines are widely administered to the public. Considering all available information, including typical recessionary periods throughout recent history, wide vaccine distribution estimates, and opinions from real estate participants, we have estimated the negative economic effect of the pandemic to last for another 8 to 10 months. Thus, while we maintain diligence in staying current with the market effects of the pandemic, any impact caused by the COVID-19 pandemic are considered temporary in nature.

- Our opinion of the prospective market values upon completion and upon stabilization assume that the proposed improvements are completed on March 25, 2023, the prospective date of completion, in accordance with the specifications cited within this report, in a good and workmanlike manner, and in conformance with the local planning authority's zoning codes and building's department construction codes.

- We make the extraordinary assumption the buyer will complete the renovation within the estimated time frame of 24 months and will not go over the estimated budget of $500,000.

- According to the point of contact, each unit is currently on a month to month to lease. We make an extraordinary assumption that all residential units are currently on a month to month lease.  We expect it to take 2 years to turn over the entire property and stabilize.

If the extraordinary assumptions employed in this appraisal are proved to be false, the values reported herein may be materially impacted.

---

[1] *The definition of Extraordinary Assumptions can be found in the Glossary of Terms, which is located in the Addenda.*



61-63 Crosby Street, Floor 3
New York, NY 10012

Mr. Bekar
Page 3
May 6, 2021

The value conclusions are based on the following **Hypothetical Conditions**[2] that may affect the assignment results:

- None.

The opinion of value expressed herein is subject to the certification, assumptions and limiting conditions, and all other information contained in the following written appraisal report.

Thank you for the opportunity to serve you.

Sincerely,

Helen Peng, MAI, MRICS, AI-GRS
Director
Certified General Real Estate Appraiser
CT License No. RCG.0001473
helen.peng@boweryvaluation.com
(646) 226-3013

Brett  Dinowitz
Associate
brett.dinowitz@boweryvaluation.com
(973) 477-9634

Michael Wahl
Vice President
michael.wahl@boweryvaluation.com
(610) 322-9858

---

[2] *The definition of Hypothetical Conditions can be found in the Glossary of Terms, which is located in the Addenda.*