UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| 145 SISSON AVENUE, LLC<br><br>        PLAINTIFF<br><br>V.<br><br>ARON PURETZ<br><br>        DEFENDANT | CIVIL ACTION NO.:<br><br>3:23-CV-00903-MPS<br><br><br><br><br><br>MAY 16, 2024 |

**AFFIDAVIT OF PENDING SUIT**

I, Houston Putnam Lowry, do affirm and say:

1. I am over the age of 18 years.

2. I believe in the obligation of an affirmation.

3. I have personal knowledge of the facts contained herein.

4. The attached complaint was obtained from the State of Connecticut Judicial Department website in *Hartford WV LLC et al v. Asylum Hill Apt. Manager LLC et al*, Docket #HD6 HHD-CV24-6183139-S.

5. The complaint seeks, *inter alia*, "a declaratory judgment affirming the automatic termination of Manager LLC [Asylum Hill Apt Manager LLC as the manager of Asylum Hill Apt LLC] and assumption of the Asylum Hill management duties by the Plaintiffs."

6. 145 Sisson Avenue, LLC has asked for a charging order against Asylum Hill Apt Manager LLC and Asylum Hill Apt LLC, *inter alia* (#41).

7. If this relief was granted, it might well affect 145 Sisson Avenue, LLC's pending application for a charging order.

8. All defendants (Asylum Hill Apt Manager LLC, Asylum Hill Apt LLC, Paxe Hartford Properties Investors, LLC and Aron Puretz) were defaulted for their failure to appear on May 13, 2024 (#102.86).

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on Thursday, May 16, 2024.

_____
Houston Putnam Lowry

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed on this 15th day of May, 2024 to:

Aron Puretz
43 Fenway Circle
Staten Island, New York 10308-1240

_____
Houston Putnam Lowry, Esq.

- 2 -

| | |
|---|---|
| RETURN DATE: APRIL 23, 2024 | SUPERIOR COURT |
| HARTFORD WV LLC and AVROHOM VERSCHLEISER AS TRUSTEE OF THE FV TRUST | J.D. OF HARTFORD |
| V. | AT HARTFORD |
| ASYLUM HILL APT MANAGER LLC, ASYLUM HILL APT LLC, PAXE HARTFORD PROPERTIES INVESTORS, LLC, ARON PURETZ | MARCH 29, 2024 |

## COMPLAINT

**COUNT ONE:** **Declaratory Judgment**

1. At all times mentioned herein, the plaintiff, Hartford WV LLC ("WV"), is a New Jersey limited liability company with a principal place of business in Jackson, New Jersey, and is a successor in interest to a third-party New Jersey limited liability company, WV Holdings, LLC.

2. At all times mentioned herein, the plaintiff, Avrohom Verschleiser is a resident of New Jersey and the Trustee of the FV Trust ("AV") and acts solely in his capacity as Trustee herein.

3. At all times mentioned herein, the defendant, Asylum Hill Apt Manager LLC ("Manager LLC") is a Connecticut limited liability company with a principal place of business in Hartford, Connecticut.

4. At all times mentioned herein, the defendant, Asylum Hill Apt LLC ("Asylum Hill") Is a Connecticut limited liability company with a principal place of business in Lakewood, New Jersey.

1

5. At all times mentioned herein, the defendant, Paxe Hartford Property Investors LLC ("Paxe"), was a New Jersey limited liability company with a principal place of business in Lakewood, New Jersey.

6. At all times mentioned herein, the defendant, Aron Puretz, is an individual residing in Lakewood, New Jersey.

7. At all times mentioned herein, Asylum Hill Is the owner of certain residential real estate rental properties in Hartford, Connecticut, located at 195 - 199 Collins Street, 63 Huntington Street, and 33, 79, and 85 Sumner Street (collectively, the "Property").

8. On or about August 29, 2021, WV, through its predecessor in interest, and AV (collectively, the "Plaintiffs") contributed an aggregate of $375,000 in exchange for preferred membership interests in Asylum Hill pursuant to a *First Amendment to Operating Agreement of Asylum Hill Apt LLC* ("Amended OA") (attached hereto as **Exhibit A**).  Upon execution of the Amended OA, the members of Asylum Hill consisted of the Plaintiffs, Paxe, and Manager LLC, with Manager LLC serving as the company's manager.

9. The Amended OA required the payment to the Plaintiffs of a certain quarterly minimum Preferred Member Preferred Return (as defined therein) on a monthly basis and provided for Puretz's personal, absolute and unconditional guaranty of the full and prompt payment of all amounts due and owing to the Plaintiffs under the Amended OA, including the payment of the Preferred Member Preferred Return.

10. The Amended OA also provided the Plaintiffs with specific remedies triggered by the default of Asylum Hill, Paxe and/or Manager LLC under the Amended OA, including a default interest rate added to the Preferred Member Preferred Return, the automatic and

immediate removal of Manager LLC as the manager of Asylum, and the assumption of the management position by the Plaintiffs.

11. Asylum Hill, Paxe, Manager LLC and Puretz have collectively failed to make any Preferred Member Preferred Return payments to the Plaintiffs and are in default of the Amended OA. Furthermore, Asylum Hill has failed to pay its real estate tax obligations and has failed to service its corporate loans.

12. Despite due demand, neither Asylum Hill, Paxe, Manager LLC, nor Puretz has cooperated with or acknowledged the Plaintiffs' automatic assumption of the manager role of Asylum Hill, and none have cured the defaults.

13. Upon information and belief, Manager LLC continues to collect tenant rents and divert revenue from the Property.

14. There is an actual bona fide and substantial question in dispute between the Plaintiffs and Manager LLC as to the rights and obligations of the parties with respect to the automatic termination of Manager LLC and assumption of management duties by the Plaintiffs.

15. The Plaintiffs certify that all persons with a legal interest in this matter have been joined as parties to this declaratory judgment claim.

**COUNT TWO:** **Breach of Contract against Asylum Hill**

1. – 15. Paragraphs 1 through 15 of Count One are hereby incorporated by reference and made paragraphs 1 through 15 of Count Two.

16. Asylum Hill has breached its contractual obligations under the Amended OA.

17. As a result of Asylum Hill's aforementioned breach, the Plaintiffs have and continue to suffer damages.

**COUNT THREE:**   **Breach of Guaranty against Puretz**

1. – 17.   Paragraphs 1 through 17 of Count Two are hereby incorporated by reference and made paragraphs 1 through 17 of Count Three.

18.   Puretz acknowledged the benefit he and the corporation he controlled received as a result of the Plaintiff's investment in Asylum Hill, and unconditionally guaranteed Asylum Hill's obligations under the Amended OA.

19.   Pursuant to the Amended OA, Puretz is liable for Asylum Hill's obligations without any condition to first proceed on or exhaust any remedies against Asylum Hill or any other guarantor.

20.   Despite due demand, Puretz has failed to perform his personal guaranty and is in breach of the Amended OA.

21.   As a result of Puretz's breach, the Plaintiffs have and continue to suffer damages.

**COUNT FOUR:**   **Bad Faith against Manager LLC and Puretz**

1. – 21.   Paragraphs 1 through 21 of Count Three are hereby incorporated by reference and made paragraphs 1 through 21 of Count Four.

22.   Manager LLC and Puretz acted with a furtive design to deny the Plaintiff's benefit of their bargain and have demonstrated an intent to purposely deceive and deny the Plaintiffs their Preferred Member Preferred Return and contractual right to terminate Manager LLC and assume the management duties of Asylum Hill.

23.   Manager LLC's and Puretz's conduct constitutes a breach of the implied covenant of good faith and fair dealing.

24. As a result of Manager LLC's and Puretz's bad faith, the Plaintiffs have suffered damages and incurred attorney's fees to prosecute the present suit and declaratory judgment.

**WHEREFORE**, the Plaintiffs pray for the following relief:

1. As to the Count One, a declaratory judgment affirming the automatic termination of Manager LLC and assumption of the Asylum Hill management duties by the Plaintiffs;

2. As to the Counts Two and Three, compensatory damages;

3. As to the Count Four, compensatory and punitive damages, including attorney's fees.

4. That all allowable costs be taxed to the defendant; and

5. For such other, further or different relief as the Court deems necessary to achieve justice.

THE PLAINTIFFS

By_____
Gerald T. Giaimo
Updike Kelly & Spellacy, P.C.
265 Church Street, 10th Floor
New Haven, CT 06510
Juris No.: 102097
Tel: (203) 786-8321
ggiaimo@uks.com

| | | |
|---|---|---|
| RETURN DATE: APRIL 23, 2024 | : | SUPERIOR COURT |
| HARTFORD WV LLC and AVROHOM VERSCHLEISER AS TRUSTEE OF THE FV TRUST | : : | J.D. OF HARTFORD |
| V. | : | AT HARTFORD |
| ASYLUM HILL APT MANAGER LLC, ASYLUM HILL APT LLC, PAXE HARTFORD PROPERTIES INVESTORS, LLC, ARON PURETZ | : : | MARCH 29, 2024 |

**AMOUNT IN DEMAND AND CERTIFICATION**

The amount in demand exceeds Fifteen Thousand ($15,000) Dollars, exclusive of interest and costs, and the plaintiff further certifies that all interested persons have been joined as parties to the claim for declaratory relief.

                                             THE PLAINTIFFS

                                             By_____
                                             Gerald T. Giaimo
                                             Updike Kelly & Spellacy, P.C.
                                             265 Church Street, 10th Floor
                                             New Haven, CT 06510
                                             Juris No.: 102097
                                             Tel: (203) 786-8321
                                             ggiaimo@uks.com

Exhibit A

# FIRST AMENDMENT TO OPERATING AGREEMENT OF

## Asylum Hill Apt LLC

This First Amendment to Operating Agreement (this "**Amendment**") of Asylum Hill Apt LLC (the "**Company**") is entered into as of August 29, 2021 by and between Paxe Hartford Properties Investors LLC ("**Paxe**") and Asylum Hill Apt Manager LLC ("**Asylum**"), each with an address at 139 Ocean Avenue, Lakewood, NJ 08701 (Paxe and Asylum, collectively, the "**Original Members**"), Aron Puretz, with an address at 139 Ocean Avenue, Lakewood, NJ 08701 ("**Sponsor**"), WV Holdings LLC ("**WV**") and Avrohom Verschleiser, as Trustee of the FV Trust ("**AV**"), each having an address at 2105 West County Line Road, Suite 1, Jackson, New Jersey 08527 (WV and Av, collectively, the "**Preferred Members**") (each of the Original Members and each of the Preferred Members, individually, a "**Member**"; the Original Members and Preferred Members, collectively, the "**Members**").

## RECITALS

A. WHEREAS, the Original Members entered into that certain Operating Agreement of the Company, dated as of August __, 2021 (the "**Existing Operating Agreement**"; the Existing Operating Agreement as amended by this Amendment is hereinafter referred to as the "**Operating Agreement**") setting forth, among other things, the initial ownership structure, governance and other terms concerning the Company;

B. WHEREAS, the Original Members desire, and Preferred Members have agreed, for the Preferred Member to provide certain capital to the Original Members, in consideration for which the Original Members have assigned to Preferred Members certain membership interests in, inter alia, the Company, and have agreed that the Preferred Members shall receive certain preferred returns from the Company, as provided in more detail below; and

C. WHEREAS, the Members now desire to amend the Existing Operating Agreement on the terms and conditions set forth herein.

NOW THEREFORE, for $10.00 and other good and valuable consideration, the receipt of which is hereby acknowledged, and incorporating the above Recitals, the parties hereto hereby agree as follows:

1. **Definitions**. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Existing Operating Agreement.

2. **Amendments.** The Existing Operating Agreement is hereby amended as follows:

2.1. **Membership**. By execution of this Amendment, (i) Paxe hereby assigns to WV, and WV hereby assumes, a 7.21% membership interest in the Company, (ii) Paxe hereby assign to AV, and AV hereby assumes, a 1.80% membership interest in the Company and (iii) WV and AV hereby each joins the Company as Member. As a result of the foregoing assignments, the current membership interests of the Members are as follows:

| | |
|---|---|
| Paxe Hartford Properties Investors LLC: | 70.00% |
| Asylum Hill Apt Manager LLC: | 20.99% |
| WV Holdings LLC: | 7.21% |
| Avrohom Verschleiser, as Trustee of the FV Trust: | 1.80% |

2.2. **Preferred Member Terms.**

2.2.1. **Preferred Capital Contribution**. The Original Members acknowledge that Preferred Members have made the following contributions (each a "**Preferred Capital Contribution**"; the aggregate amount of a given Preferred Member's Preferred Capital Contribution which has been advanced by a Preferred Member but remains unreturned at any given time, the "**Unreturned Preferred Capital Contribution**"): (i) WV Holdings LLC: $300,000.00, and (ii) Avrohom Verschleiser, as Trustee of the FV Trust: $75,000.00. The Members acknowledge that all or a portion of the Preferred Capital Contribution has been or shall be deemed to have been contributed to the Company via application of an equity credit granted to one or both of the Preferred Members in lieu of a payment from the Company of an assignment fee that was to be paid to one or of both of the Preferred Members and/or their affiliates in connection with the purchase by the Company of the Property.

2.2.2. **Preferred Member Preferred Return**. Notwithstanding anything to the contrary elsewhere in the Operating Agreement, in consideration for, among other things, Preferred Members' agreement to advance the Preferred Capital Contribution as provided herein, the Original Members shall pay to the Preferred Member a preferred return (the "**Preferred Member Preferred Return**") on the Unreturned Preferred Capital Contribution at the Preferred Member Preferred Return Rate (on the terms and conditions as set forth below). The Preferred Member Preferred Return Rate shall be equal to: (a) prior to a default beyond applicable notice and cure periods by the Company and/or the Original Members under the Operating Agreement (a "**Default**"), including in its obligations to pay the Preferred Member Preferred Return as and when provided herein, and/or to return the Unreturned Preferred Capital Contribution on or before the Preferred Capital Payment Deadline (as defined below), twelve percent (12%) per annum and (b) after the occurrence of

a Default hereunder, twenty four percent (24%) per annum. The Preferred Member Preferred Return shall be paid monthly, in arrears, on the first business day of each calendar month until the Preferred Capital Contribution has been returned in full to the Preferred Member (except for the first installment thereof, which shall be paid in advance on the date of execution of this Amendment, covering the period beginning on the date hereof and ending on the last date of the current calendar month).

2.2.3. **Minimum Preferred Member Preferred Return**. The Members hereby agree that the Preferred Member Preferred Return to be paid to Preferred Member pursuant to Section 2.2.2 above shall in no event be less than that amount that would have accrued on any portion of the Preferred Capital Contribution from the date it was advanced through that date which is the six month anniversary of the 1st day of the calendar month following the date on which said sum was advanced (said minimum amount, as to any given advance, shall be referred to as the "**Minimum Preferred Member Preferred Return**"), such that, if the aggregate amount of Preferred Member Preferred Return actually paid hereunder on a given portion of the Preferred Capital Contribution at the time the Unreturned Preferred Capital Contribution is returned to the Preferred Member is less than the Minimum Preferred Member Preferred Return in connection with said advanced amount, then the balance of the Minimum Preferred Member Preferred Return shall be due and payable simultaneously with payment of said portion of the Unreturned Preferred Capital Contribution.

2.2.4. **Preferred Capital Payment Deadline**. The Company agrees that the entire amount of the Unreturned Preferred Capital Contribution (and all unpaid Preferred Member Preferred Return thereon) shall be returned to Preferred Member on or before September 1, 2025 (the "Preferred Capital Payment Deadline"), failure of which shall immediately and automatically constitute a Default by Original Members hereunder.

2.2.5. **Additional Capital Contributions**. Notwithstanding anything to the contrary in the Existing Operating Agreement, in no event shall Preferred Member be required to make any additional Capital Contributions (other than the Preferred Capital Contribution provided herein), and the advancement of same by any other Member(s) or Person(s) shall in no way cause (i) the dilution of the Ownership Interest of Preferred Member, (ii) that the Preferred Member shall be deemed in default of the Operating Agreement, or (iii) that the Preferred Member shall be deemed a debtor of, or to owe any amount to, the Company or any other person or entity, for any reason.

2.3. **Mortgage Loan.** The Members acknowledge that the Company and JM TIC have taken, or shall take, in connection with their purchase of the Property, a mortgage loan from _____ (the "**Mortgage Lender**") in the amount of _____ (the "**Loan**"), which Loan is or shall be secured by a Mortgage recorded against the Property (the "**Mortgage**") (the Mortgage, along with the Note referenced therein and secured by same, and all other documents and instruments executed and/or delivered in favor of the Mortgage Lender in connection therewith, the "**Mortgage Loan Documents**"). Notwithstanding anything to the contrary herein, the Members agree that any default by the Company under the Mortgage Loan Documents, and/or by Sponsor or any other guarantor of any part of the Loan in connection with any guaranty executed in connection therewith, which remains uncured beyond the applicable grace, notice or cure period set forth therein, if any, shall be deemed to be a Default hereunder.

2.4. **Distributions and Profits/Losses/Depreciation.**
  2.4.1. Notwithstanding anything to the contrary in Article VII or elsewhere in the Existing Operating Agreement, Articles 7.2 and 7.3 of the Existing Operating Agreement are hereby amended and restated as follows:

  7.2 Distributions of Net Cash Flow. The LLC shall distribute, from time to time, at least quarterly, such amount of Net Cash Flow of the LLC from regular ongoing operations after the payment of expenses, to the Members, as follows:
  (a) first, to the Preferred Members who have Unreturned Capital Contributions, pro rata according to their Unreturned Capital Contributions, until the Preferred Member Preferred Return is paid in full;
  (b) second, to the Members who have Unreturned Preferred Capital Contributions, pro rata according to their Unreturned Preferred Capital Contributions, until their Preferred Return is paid in full;
  (c) third, to all Members, pro rata according to their Percentage Interests.

  7.3    Distributions of Net Proceeds from Capital Transactions. The LLC shall distribute, from time to time, such amount of Net Proceeds from Capital Transactions, as follows:
  (a) first, to the Preferred Members who have Unreturned Capital Contributions, pro rata according to their Unreturned Capital Contributions, until the Preferred Member Preferred Member Preferred Return is paid in full;
  (b) second, to the Preferred Members who have Unreturned Preferred Capital Contributions, pro rata according to their Unreturned Preferred Capital Contributions, until the Unreturned Preferred Capital Contributions are paid in full;

(c) third, to the Members who have Unreturned Capital Contributions, pro rata according to their Percentage Interests, until their accrued Preferred Return is paid in full;

(d) fourth, to the Members, pro rata according to their Percentage Interests, until all Capital Contributions have been repaid in full; and

(e) fifth, to all Members, pro rata according to their Percentage Interests.

2.4.2. Notwithstanding anything to the contrary in Article VII or elsewhere in the Notwithstanding anything to the contrary herein, the Preferred Member Preferred Return shall be payable monthly as set forth above, whether or not Net Cash Flow or other amounts are available for distribution, and, in the event that they are not so available, notwithstanding anything to the contrary in the Operating Agreement, Sponsor shall be required to advance to the Company, as additional contributions, and the Company shall promptly distribute to Preferred members, any amounts necessary in order to pay same in a timely manner.

2.5. **Management.**

2.5.1. Notwithstanding anything to the contrary in Article IV or elsewhere in the Existing Operating Agreement, for so long as any Unpaid Preferred Capital Contributions and/or other amounts due to Preferred Member hereunder remain outstanding, Asylum (and/or any other manager of the Company pursuant to the Existing Operating Agreement) shall not make any of the following decisions or cause the Company to take any of the following actions (collectively, "Major Decisions") without the prior written consent of Preferred Member:

2.5.1.1. the acquisition of any land or interest therein, other than the Property, or entering into any contract of sale for any such acquisition;

2.5.1.2. taking any loan or other financing, refinancing the Loan or otherwise mortgaging of the Property or any part thereof (other than the taking of the initial Loan pursuant to the terms set forth above, which is hereby approved);

2.5.1.3. causing any work to be performed at the Property other than work performed in the ordinary course of business of the Company and any work required for health and safety of persons or property;

2.5.1.4. the sale or other transfer of all or any portion of the Property;

2.5.1.5. entering into any lease or other agreement for the use and or occupancy of any portion of and/or space at the Property on terms that are not market rate or to an affiliate of any of the Original Members;

2.5.1.6. entering into any management agreement for all or any portion of the Property or any material modification, change or amendment to, or renewal (other than automatic renewals) of or termination or cancellation of, such management

agreement, or selection of a replacement managing agent or the determination of the terms of any replacement management agreement;

2.5.1.7. in the event of a fire, other casualty or partial condemnation, the determination of whether to construct or reconstruct the improvements located on the Property, where such construction or reconstruction will cost in excess of $200,000;

2.5.1.8. consent to receipt of any award in the event of a total or partial condemnation;

2.5.1.9. any decision that would have a material adverse effect on Preferred Member to make or to revoke a material tax election (including, without limitation, the making of an election under Section 754 of the Code); the selection of accounting methods or the material variation of existing accounting methods;

2.5.1.10. entering into any material agreement or other written arrangement with a Person, whether or not said Person is an Affiliate of any Member, or the modification, amendment or change of any such agreement or other arrangement, in each case if such agreement or arrangement is not in the ordinary course of business of the Company;

2.5.1.11. initiation or settlement of any claim (including claims made by or against tenants) where the amount in controversy is in excess of $200,000;

2.5.1.12. admission to the Company of additional or successor Members except as expressly provided in this Agreement;

2.5.1.13. taking any action which would cause the Company to be bankrupt; and

2.5.1.14. removal, replacement and/or resignation of any of the Original Members.

2.5.2. Upon (i) any default by the Company under the Loan Documents or any loan documents executed in connection with any loan secured by all or any portions of the Property after applicable notice and cure periods under such loan documents and such lender has sent a default notice and only to the extent that such default is not caused by the act or omission of the Preferred Member, (ii) any default by Original Members and/or the Company to pay or cause to be paid to Preferred Member any amounts due to Preferred Member hereunder and/or pursuant to any of the Additional Amended Operating Agreements, on or before the date same become due (including but not limited to the obligation to make monthly payments of Preferred Member Preferred Return hereunder, and to return the entire Unreturned Preferred Capital Contributions and all other amounts due to Preferred Member on or before the Preferred Capital Payment Deadline), or any other Default hereunder and/or (iii) the taking of any Major Decision without the consent of the Preferred Member, the Members agree that (i) the Preferred Member Preferred Return Rate shall increase to twenty four percent per annum (as provided above) and (ii) the Original Members (and/or any other manager of the Company pursuant to the Existing Operating Agreement) shall automatically and immediately be removed as Manager under the

Operating Agreement and shall be replaced as Manager by Preferred Member. Upon Preferred Member becoming the Manager pursuant to the prior sentence, Preferred Member shall immediately and automatically have the authority to make any and all decisions and cause the Company take any and all actions it deems fit in its sole discretion, including but not limited to the Major Decisions described above, and may execute any and all documents on behalf of the Company in connection therewith.

2.6. **Consent.** All Members hereby agree that whenever the consent of any and/or all of the Original Members is called for in the Existing Operating Agreement, the consent of Preferred Member shall be required as well.

2.7. **Tenant in Common Interest.**
The Members acknowledge that the Company owns or shall own a 92% Tenant in common interest in the Property, and that JM TIC LLC ("JM TIC") owns the remaining 8% tenant in common interest in the Property. The undersigned Sponsor confirms that he is the manager of JM TIC, and by his execution below, he agrees on behalf of himself and on behalf of JM TIC, that any funds received or to be received by JM TIC in connection with its ownership of the Property shall first be utilized to distribute to Preferred Members sums due in connection herewith, in the order of priority set forth in Section 2.4.1 above, until same are paid in full, and that the members of JM TIC shall only receive proceeds from the Property when the Original Members are entitle to receive distributions under Section 2.4.1 above.

3. **Buyout of Portion of Interest of Preferred Member**. Notwithstanding anything to the contrary herein, provided no Default has occurred hereunder which has not been cured within the grace, notice or cure period applicable to same, upon timely payment in full to Preferred Members of the Unreturned Preferred Capital Contributions, the Preferred Member Preferred Return due thereon, and all other amounts due to Preferred Members hereunder, a Percentage Interest in the Company of 7.21% shall be deemed to be automatically and immediately transferred from Preferred Members (pro rata) to Asylum, upon which transfer (i) the Preferred Members shall no longer enjoy the preferred rights set forth in this Amendment, (ii) the Preferred Members' rights set forth in Section 2 above shall be deemed to be terminated, and (iii) the Preferred Members shall hold their remaining Percentage Interests in the Company (WV: 1.44%; (ii) AV: 0.36%), with the same rights as any other common Member pursuant to the Existing Operating Agreement. Notwithstanding anything to the contrary, Original Members shall be responsible for all costs and expenses of Preferred Member in connection herewith, including reasonable legal fees.

4. **Sponsor Provisions**.

4.1. Guaranty. Sponsor (in this Section 4.1 also referred to at times as "**Guarantor**") does hereby, jointly and severally, on behalf of himself/itself and his/its heirs, executors, administrators, successors and assigns, absolutely and unconditionally guarantee to Preferred Members, their successors and assigns the full and prompt payment of the Preferred Capital Contribution, Preferred Member Preferred Return and all other amounts due and to become due and owing to Preferred Members under the Operating Agreement as amended hereby. Guarantor confirms that (i) he owns a beneficial and/or economic interest in the Original Members, (ii) he shall receive material benefit from the Preferred Members' execution of and performance under this Amendment and (iii) the Preferred Members are relying on this Guaranty in its execution of this Amendment. This is a guaranty of payment, not of collection. In the event that any or both of the Preferred Members shall not receive timely payment of any of said amounts, Guarantor hereby consents and confesses that Preferred Members may file judgment against him, personally, in any and all venues and courts of competent jurisdiction, and enforce same with all available remedies at law or in equity. Guarantor acknowledges that the above guaranty is a material inducement for Preferred Members to take the actions set forth herein, and that no act or omission of Preferred Members shall be deemed a waiver of Preferred Members' rights in connection with this Guaranty. This Guaranty shall survive the termination of the Operating Agreement, the winding-up or dissolution of the Company, and all other events and/or occurrences. This Guaranty shall be deemed to be a Guaranty of payment, with respect to all monetary obligations, and of performance, with respect to all non-monetary obligations guaranteed by Guarantor hereunder, and in no event shall be construed to be a Guaranty of collection. Guarantor agrees that its liability under this Guaranty shall be primary and that in any right of action which may accrue to Preferred Members under the Operating Agreement, Preferred Members may, at their option, proceed against the Guarantor and the Company, or may proceed against either Guarantor or the Company, without having any action against or having obtained any judgement against the Company or Guarantor. Notwithstanding any payments made by Guarantor hereunder, Guarantor shall not be subrogated to any of the rights of the Preferred Members against the Company for any payment, nor shall Guarantor seek any reimbursement from the Company in respect of any payments made by Guarantor hereunder until all of the amounts due or becoming due to the Preferred Members under the Operating Agreement and this Guaranty have been paid in full. Guarantor further agrees that (i) the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, modified, affected or impaired by reason of (a) the invalidity or unenforceability of the Operating Agreement or the assertion by Preferred Members against the Company or any other party of any of the rights or remedies reserved to Preferred Members pursuant to the provisions of the Operating Agreement, or allowed at law or in equity; or (b) any limitation of liability of the Company or any

other said party under the Operating Agreement; (ii) this Guaranty shall in no way be terminated, modified, affected or impaired by and shall remain in full force and effect as to any modification, extension or renewal of the Operating Agreement and as to any withdrawal and/or sale or assignment of Guarantor's membership and/or managerial interests in the Company; and (iii) in any cause of action which shall accrue to Preferred Member under the Operating Agreement, Preferred Member may, at its option, proceed against Guarantor hereunder without having first given notice to, commenced any action against or having exhausted any remedy or claim against or having obtained any judgment against the Company, its members, or its/their successors or assigns. In addition, Guarantor hereby agrees to pay all of Preferred Members' cost and expense (including reasonable attorneys' fees and disbursements) incurred in connection with the enforcement of this Guaranty, whether by suit, action, negotiation, arbitration or otherwise (and whether or not an action or proceeding is commenced).

**4.2.** Additional Representations of Sponsor. Sponsor hereby covenants, warrants and represents to Preferred Member that: (A) (i) The Company has no liabilities or obligations except in connection with the Mortgage Loan Documents, (ii) the Company does not own, operate or manage any businesses, assets or properties other than the Property, and (iii) the Company is engaged in no business other than the ownership and operation of the Property. (B) Sponsor has the right and authority to enter into this Agreement, and to cause the Original Members to enter into this Agreement, and no further consent is needed in connection with the execution of this Agreement by any party except as has been obtained and delivered to Preferred Members prior to the execution hereof. (C) Execution of this Agreement is not a default under the Mortgage Loan Documents, and the consent of Mortgage Lender for the execution hereof is not required or has been obtained. The inaccuracy or untruthfulness of any representation of Sponsor above shall be deemed to be a material Default hereunder.

5. **Consent of Members**. The execution hereof by the Members shall be deemed to constitute and evidence the consent of each of said Members to the transactions provided for herein, and no separate meeting, consent and/or resolution shall be required in connection therewith.

6. **No Other Modifications; Conflicts**. Except as modified by this Amendment, the terms and conditions of the Existing Operating Agreement shall remain unmodified and in full force and effect. If there are any inconsistencies between the terms of the Existing Operating Agreement and the terms of this Amendment, the terms of this Amendment shall prevail.

7. **Signatures and Counterparts**. This Amendment may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together constitute one and the same instrument. The parties may execute and deliver the counterparts of this

Amendment electronically by facsimile or by pdf attachment to an email and such electronic copies and further copies thereof shall be deemed originals for all purposes.

[Signature page follows.]

IN WITNESS WHEREOF, the Members and Sponsor have executed this First Amendment to Operating Agreement as of the date first written above.

**PREFERRED MEMBERs:**

WV Holdings LLC

_____
By: Avrahom Weinberg
Its: Manager

_____
Avrohom Verschleiser, as Trustee of the FV Trust

**ORIGINAL MEMBER:**

Paxe Hartford Properties Investors LLC

*/s/ Aron Puretz*
By: Aron Puretz
Its: Managing Member

Asylum Hill Apt Manager LLC

*/s/ Aron Puretz*
By: Aron Puretz
Its: Sole Member

**SPONSOR:**

*/s/ Aron Puretz*
Aron Puretz